[No. 39879.    En Banc.    November 20, 1969.]

ALASKA LAND COMPANY, INC., et al., *Appellants,* v. KING COUNTY et al., *Respondents.*\*

\*Reported in 461 P.2d 339.

*Robbins, Felix & Robbins,* by *Jennings P. Felix,* for appellants.

*Charles O. Carroll, James E. Kennedy,* and *William L. Paul, Jr.,* for respondents.

ROSELLINI, J.—The appellant, lessee of the Waldorf Hotel in Seattle, has appealed from the trial court's denial of its challenge to the validity of the tax assessed against the hotel by the respondent assessor. The trial court found that the appellant had failed to sustain its burden of showing that the assessor had acted fraudulently or arbitrarily and capriciously.

The property was assessed as a unit, the land and building being valued at approximately $536,000 in 1964 and approximately $527,000 in 1965, 1966 and 1967. The appellant contends that this was an improper approach to the valuation problem, and that, instead of valuing the land and the building, the assessor should have valued the interest of the lessee and the interest of the lessors separately and should have added them together to arrive at the assessed value.

In approaching the question presented, we bear in mind that there is a presumption in favor of the assessment, and that the burden rests upon the property owner to show by clear and convincing evidence that the land was assessed at such an excessive valuation as to amount to constructive fraud, or that the assessor acted arbitrarily and capriciously in valuing the property. *Dexter Horton Bldg. Co. v. King County,* 10 Wn.2d 186, 116 P.2d 507 (1941); *Swanson v. Snohomish County,* 191 Wash. 389, 71 P.2d 170 (1937); *Bellingham Community Hotel Co. v. Whatcom County,* 190 Wash. 609, 70 P.2d 301 (1937); *Templeton v. Pierce County,* 25 Wash. 377, 65 P. 553 (1901).

In *Ozette Ry. v. Grays Harbor County,* 16 Wn.2d 459, 133 P.2d 983 (1943), this court declared that a mere showing that the assessor proceeded upon a fundamentally wrong basis will not entitle a taxpayer to have the assessment set aside in court; he must show further that the result of the

procedure used was a palpably exorbitant evaluation, greatly disproportionate to valuations of property of like character in the same taxing district.

Examining the record of the case, we find that the appellant made no attempt to meet this burden. It offered evidence concerning the value of the lessor's interest. That interest is subject to the appellant's 99-year lease. The appellant's predecessor constructed the building, and the appellant is responsible for the mortgage on the building. The lessor exacts no rent for the building; rather the rent, under the terms of the lease, is based upon the value of the bare land. The appellant's witnesses said that the lessor's interest was worth $100,000, but conceded that it might be worth as much as $160,000. They used the ground rent as a basis of evaluation. The assessor valued the land at $200,000.

The appellant also offered evidence of the value of its lease. The lessee's interest is heavily encumbered, the outstanding mortgage being in the amount of approximately $300,000. The evidence was that the income is not sufficient to pay the expenses, including salaries of corporate officers and the mortgage payments on principal and interest, and also yield a net income.

However, the appellant offered no evidence on the market value of the land and building. There was no evidence that the assessed value of the hotel was disproportionate to the assessed value of comparable properties or that it exceeded the market value of the property itself. The conclusion appears inescapable that the appellant has failed to sustain its burden of proof.

But the appellant's position, while not explicitly stated in its brief, appears to be that under its theory of proper valuation, the fact of overvaluation is shown and that there is no necessity for evidence of experts on market value of the property. If the lessor's interest is worth no more than $100,000 as the appellant's witnesses testified, and if, as it contends, the lease is worthless, then the property is obviously overvalued if their theory is accepted.

250

■ By the appellant's method, the value of the building is entirely lost to the tax assessor. It has no value to the lessor because he derives no rent from it, his rent being exacted only on the value of the land, and it has no value to the lessee because he is not making a profit on it.

The appellant's theory does great violence to the obvious intent of the relevant taxing statutes. RCW 84.36.005 provides:

All property now existing, or that is hereafter created or brought into this state, shall be subject to assessment and taxation for state, county, and other taxing district purposes, upon equalized valuations thereof . . . excepting such as is exempted from taxation by law.

Other pertinent statutes declare:

RCW 84.40.030 The true cash value of property shall be that value at which the property would be taken in payment of a just debt from a solvent debtor. In assessing any tract or lot of real property, the value of the land, exclusive of improvements, shall be determined; also, the value of all improvements and structures thereon and the aggregate value of the property, including all structures and other improvements . . . Taxable leasehold estates shall be valued at such price as they would bring at a fair, voluntary sale for cash.

RCW 84.40.040 [The assessor] shall actually determine as nearly as practicable the true and fair value of each tract or lot of land listed for taxation and of each improvement located thereon and shall enter fifty percent of the value of such land and of the total value of such improvements, together with the total of such fifty percent valuations, opposite each description of property on his assessment list and tax roll.

RCW 84.52.040 . . . [T]he assessed value of the property of such taxing district shall be taken and considered as the taxable value upon which such levy shall be made.

It was plain to the trial court, as it is to this court, that these statutes require the tax assessor to do exactly what he did in this instance—assess the value of the land and the buildings separately and add the two values together to arrive at the assessed valuation of the unit of property. This is generally understood to be the duty of the tax

assessor. In 2 T. Cooley, The Law of Taxation § 559 (4th ed. 1924), the rule is stated:

> Ordinarily buildings and other improvements on land are taxed as a part of the land and not separately, unless the tax statute otherwise provides. However, if buildings or other improvements are erected on exempt land or on land owned by another person they are taxable separately to their owner, provided they are not fixtures, unless otherwise provided by statute, either as real or personal property according to circumstances.

(Footnotes omitted.)

In § 593, the commentator says:

> Two questions arise in connection with the taxation of lessees. First, is the property leased to be taxed to the lessor or the lessee. Second, conceding the property is to be taxed to the lessor, has the lessee such an interest because of his lease as to be separately taxable on the lease as distinguished from the leased property.

(Footnotes omitted.)

Cooley observes that legislatures ordinarily do not provide for the separate taxation of leaseholds, apart from the real property, but they may do so, and that taxation of leases of exempt lands is an example. He cites the early Washington case of *Moeller v. Gormley*, 44 Wash. 465, 87 P. 507 (1906), for the proposition that a leasehold may be taxable, even though the property itself is exempt in the hands of the lessor.

In *Trimble v. Seattle*, 231 U.S. 683, 689, 58 L. Ed. 435, 34 S. Ct. 218 (1914) affirming *Trimble v. Seattle*, 64 Wash. 102, the United States Supreme Court said:

> In ordinary cases the whole property is taxed and which party shall bear the burden is not a matter of public concern.

Pointing out that, unless a leasehold given by the state were not taxed to the lessee, the result would be that the lessee held a privileged position not shared by lessees from private individuals, the court said, at 689-90:

> If these leaseholds are not taxable, they are a favored class of property; for ordinarily leaseholds are taxed even if they are lumped and included in the value of the fee.

*See also* 84 C.J.S. *Taxation* §§ 404(d), 410-11, and an annotation, *Income or rental value as a factor in evaluation of real property for purposes of taxation,* 96 A.L.R.2d 666 (1964).

The assessor urges that this court was in error in the recent case of *Pier 67, Inc. v. King County,* 71 Wn.2d 92, 426 P.2d 610 (1967), which is the case relied upon by the appellant for the novel theory of evaluation which it advances. That case involved the valuation of the leasehold estate of a corporation in tidelands owned by the state of Washington. The assessor had sought to tax the improvements, a motor hotel built by the lessee, but this court held that the improvements were permanently affixed to the realty and belonged to the state. The assessor urges that this was a faulty analysis, inasmuch as the state does not collect rent upon the value of the improvements (citing RCW 79.01.520) but treats them as the property of the lessee. He further points out that RCW 84.04.080, providing for taxation of improvements on lands, the fee of which is still vested in the state of Washington, is consistent with this theory.

The assessor argues further that, assuming the court correctly decided that the improvements built by Pier 67, Inc., were not taxable to it, it was nevertheless in error in the method of valuation which it used to determine the taxable value of the leasehold estate, which it held was subject to taxation. In effect, this court held that only the net value of the lease is taxable and that the rent must be deducted, as well as the mortgage, in arriving at that value. It was this holding which gives the appellant its theory that its lease is without value for tax purposes. The assessor urges that a lease is worth at least the amount of money that the lessee is willing to pay for it (the rent) or that a lending institution is willing to advance on the security of it (the mortgage). Net profits will naturally influence the market value, he says, but they do not in themselves constitute the market value.

We need not decide here whether we were in error in that case, since we are of the opinion that that case does

not aid the appellant. It does not stand for the proposition that, where there are improvements erected by the lessee, those improvements are taxable neither to the owner nor to the lessee. On the contrary, implicit in the opinion is a holding that the improvements, being a part of the realty, are taxable to the owner.[1]

The assessor's method of evaluating the property which the appellant leases was entirely consistent with the theory embodied in that opinion. In holding that the lessee can be taxed only on the value of his lease which is attributable to operating profits, we simply gave implicit recognition to the fact that the land and building are taxed in rem, as real property, unless the title to the improvements is in the lessee.[2] The case may be in error in its construction of RCW 84.04.080 and/or in its method of evaluating a lease,[3] but it does not stand for the proposition that improvements on leased land cannot be taxed in rem. Consequently, it is not necessary to reexamine that case, or to overrule it, in order to sustain the assessor's action in this case.

---

[1]*See Metropolitan Bldg. Co. v. King County*, 62 Wash. 409, 411, 113 P. 1114 (1911), one of the first cases in which this court was called upon to consider the question of the taxability of a lease of exempt lands. This court said:

> If the real property upon which the buildings are erected were owned by a private individual, we apprehend that the question raised in this case would not have occurred; for, unless controlled by the contract of the parties, the real property would be assessed to the owner of the fee, while the leasehold would be assessed to the lessee.

[2]We are not here called upon to decide whether RCW 84.04.080 and 84.04.090 require the assessor to tax all leaseholds as chattels real, in addition to taxing the real property, and voice no opinion on that subject.

[3]*See The Valuation of Leaseholds for Ad Valorem Property Tax Purposes—The Reasonable Assessor Standard*, 1968 Wash. U.L. Quarterly 136 (Winter 1968). The author discusses the three accepted methods of valuation: (1) the comparable sales method, (2) the cost method, and (3) capitalization of income.

In discussing the latter, he observes that if the rent is deducted, the value arrived at is not the full market value of the lease but only its "premium" or "bonus" value.

Nowhere does the author suggest that the existence of a mortgage should play any role in valuation.

We hold, therefore, that the tax assessor is required by the statutes to assess each parcel of real property with the improvements erected thereon, on the basis of its market value, without deduction for indebtedness; and that where the land is leased, it is not his duty to apportion the taxes between the lessor and the lessee.

Accordingly, the assessor, in fixing the market value of real property, has no duty to deduct the encumbrances upon any leasehold interest that may be held in the property in arriving at the market value of the property itself.

The appellant urges also that the assessor proceeded upon a wrong basis because he considered only the "income producing capabilities" of the property and not the actual income, citing *In re Metropolitan Bldg. Co.*, 144 Wash. 469, 258 P. 473 (1927). Like *Pier 67, Inc. v. King County, supra,* that case concerned the valuation of a lease of exempt lands. It does not stand for the proposition that the assessor has a duty to consider the actual income of properties which he assesses. The case merely holds that, under the peculiar circumstances of that case, he should not have ignored the income figures which were made available to him.

In any event, since the appellant failed to show that the assessed valuation of the property was excessive or the result of fraudulent, arbitrary or capricious action, he has brought no facts upon which this court could base a finding that he was prejudiced by the assessor's method of arriving at the market value of the property.

The judgment is affirmed.

HUNTER, C. J., HILL, FINLEY, WEAVER, HAMILTON, HALE, and NEILL, JJ., and DONWORTH, J. Pro Tem., concur.